IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **KAREN A. STOKES,** | * |
| **Plaintiff,** | * |
| vs. | * CIVIL ACTION NO. 06-00021-WS-B |
| **LINDA S. McMAHON,**[1] | * |
| **Commissioner of Social Security,** | * |
| **Defendant.** | * |

**REPORT AND RECOMMENDATION**

Plaintiff Karen A. Stokes ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. Oral argument was held on February 7, 2007. Upon careful consideration of the administrative record, oral argument and the memoranda of the parties, it is recommended that the decision of the Commissioner is due to be **REVERSED** and **REMANDED.**

**I.     Procedural History**

Plaintiff protectively filed an application for benefits on November 14, 2002 and alleged that she has been disabled since November 14, 1996 due to osteoporosis, osteoarthritis, "hand disease,"[2]

---

[1] On January 20, 2007, Linda S. McMahon became the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Linda S. McMahon has been substituted, therefore, for Commissioner Jo Anne B. Barnhart as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Also noted herein as "Dupuytren's Disease" – an abnormal thickening of tissue beneath the skin in the palm of the hand, which often develops in both hands usually progresses very slowly. When the tissue between the skin and tendons thickens, it may eventually limit movement or cause the fingers to bend so that they cannot be straightened. See www.webmd.com (Last visited February 9, 2007).

cervical disc problems, chronic obstructive pulmonary disease ("COPD"), lower back pain, migraines and depression. (Tr. 47, 62, 68). Plaintiff's application was denied initially and upon reconsideration. (Id. at 31-37). Plaintiff then filed a timely Request for Hearing before an Administrative Law Judge ("ALJ"). (Id. at 38). On April 13, 2004, Administrative Law Judge Stuart A. Wein ("ALJ Wein") held an administrative hearing which was attended by Plaintiff and her representative. (Id. at 275-308). ALJ Stein concluded that Plaintiff is not disabled and issued an unfavorable decision on July 7, 2004. (Id. at 15-24). Plaintiff's request for review was denied by the Appeals Council ("AC") on November 22, 2005 thereby making the ALJ's decision the final decision of the Commissioner under 20 C.F.R. § 404.981. (Id. at 6-8). The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

**II.     Issues on Appeal**

A.      Whether the ALJ erred by failing to assign any weight, or discuss what weight was assigned, to Plaintiff's treating physician, and as a result, erred in finding that she retains the residual functional capacity to perform a full range of light work?

B.      Whether the ALJ erred by failing to perform a function-by-function analysis?

C.      Whether the ALJ erred by finding that Plaintiff can return to her past relevant work as a cashier?

**III.    Factual Background**

Plaintiff was born on February 25, 1957, and was 47 years old at the time of the hearing. (Tr. 69, 74, 80-88, 106, 282, 284-285). She has a GED and past relevant work experience as a nurse's assistant and cook/cashier. (Id. at 69, 74, 80-88, 106, 282, 284-285). Plaintiff, who is 5'7" and weighs 138 pounds, reported that she experienced a significant weight gain within the last year. (Id. at 293). At the April 13, 2004 administrative hearing, Plaintiff testified that she last worked in 1992

or 1993, for less than one year, at a restaurant as a cook and cashier.  (Id. at 285-286).  According to Plaintiff, the job entailed constant standing and heavy lifting.  (Id.)  Plaintiff indicated that she attempted to work after her cook/cashier job, but was unable to do so because of problems with her neck.  (Id. at 288).  According to Plaintiff, she cannot return to her cook/cashier job because she cannot "push" the cash register or make biscuits.  (Tr. 305).

Regarding her impairments, Plaintiff testified that her medical problems include suffering from a combination of aching neck pain and back pain, which is aggravated by cold or rainy weather, and which has worsened since November 2002.  (Id. at 291-292).  Additionally, Plaintiff testified that she has been depressed for years but has not received any mental health treatment except antidepressant medication (Zoloft).  (Id. at 299-301).  Moreover, Plaintiff testified that she has difficulty using her hands due to hand pain, and that she experiences incapacitating migraines at least once a week.  (Id. at 301-304).  According to Plaintiff, she also cannot sit for extended periods due to her pain, and as a result, lies down about 12 hours per day in the bed.  (Id. at 297).  Plaintiff indicated that she is unable to perform household chores such as mopping or sweeping, but that she is able to do the laundry and care for her personal needs.  (Id. at 296-300).  Plaintiff testified that she is being treated by Dr. Belen.  (Tr. 290).  Plaintiff receives medical care at the Mobile County Health Department ("MCHD") for her chronic neck and back pain, which cause difficulty standing and walking such that she cannot perform household chores.  (Id. at 292, 298).  Her reported medications include Fosamax, Premarin, Esgic, Soma, Darvocet, Albuterol, Lipitor, Zoloft, Propoxy, Butale, Carisoprodol and a Proventil Inhaler.  (Id. at 73, 89, 94, 100, 105).

**IV.     Analysis**

     **A.     Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[3]  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding that substantial evidence is defined as "more than a scintilla but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]").  In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.  Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. DIST. LEXIS 10163 (S.D. Ala. 1999).

     **B.     Discussion**

An individual who applies for Social Security disability benefits must prove her disability. 20 C.F.R. §§ 404.1512, 416.912.  Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 404.1505(a), 416.905(a).  The Social

---

[3] This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability. 20 C.F.R. §§ 404.1520, 416.920.[4] In the case <u>sub judice</u>, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since her alleged onset date. (Tr. 18-24). The ALJ concluded that while Plaintiff has the severe impairments of cervical disc disease, osteoarthritis, migraine headaches and bilateral Dupuytren's contracture, they do not meet or medically equal the criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulation No. 4. (<u>Id</u>.) The ALJ then determined that Plaintiff retains the residual functional capacity ("RFC") to perform light work[5] and that she is able to perform her past relevant work ("PRW") as a cashier; thus, she is not disabled. (<u>Id</u>.)

The relevant[6] evidence of record reflects that Plaintiff was treated on January 25, 2000 at the

---

[4]The claimant must first prove that she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. <u>Jones v. Bowen</u>, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. <u>Id</u>. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. <u>Sryock v. Heckler</u>, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. <u>Jones v. Apfel</u>, 190 F.3d 1224, 1228 (11th Cir. 1999). <u>See also</u> <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing <u>Francis v. Heckler</u>, 749 F.2d 1562, 1564 (11th Cir. 1985)).

[5]Light work involves lifting no more than 20 pounds at a time, frequent lifting/carrying of objects weighing up to 10 pounds, sitting 2 hours and walking/standing 6 hours per day. 20 C.F.R. § 404.1567(b).

[6]While other records relating to Plaintiff's treatment have been reviewed, only those records relating specifically to her claims on appeal will be discussed herein. For example, while the undersigned notes that additional records were submitted to the Appeals Council for review (Tr. 250-274), they merit no discussion here, as this review is limited to that evidence which was before the ALJ at the time he

USA emergency room ("ER") for lower back and bilateral flank pain. (Tr. 141-144). X-rays revealed minimal caliceal blunting on the right without evidence of obstruction. (Id. at 144). Minimal spasm on the right was noted, but there was no evidence of abnormal calculus or filling defect. (Id.) Plaintiff was subsequently treated on January 27-28, 2000, in the Mobile Infirmary ("the Infirmary") ER, for back pain. (Id. at 145-149). She was diagnosed with back pain secondary to musculoskeletal strain. (Id.) She had an ultrasound, spiral CT scan and lumbar spine x-ray. (Id.) All were normal except that the lumbar x-ray showed some degenerative changes of L5-S1. (Tr. 145-149). She was given Norflex, Lodine, Darvocet and Keflex. (Id.) An examination by Thomas A. Blessey, M.D. ("Dr. Blessey") revealed tenderness around her L4-5. (Id. at 149, 152). He noted her lumbar x-ray results and that she was grossly intact from a neurological standpoint. (Id.) On November 11, 2000, Plaintiff was treated at the Infirmary ER for a valium overdose. (Id. at 155-161). The treatment notes indicate that Plaintiff has had chronic migraines since age 17 and depression. (Id. at 155-161). Upon exam, she was alert and oriented and had normal strength, sensation and reflexes. (Tr. 155-161). An MRI of Plaintiff's brain did not reveal any brain abnormalities. (Id. at 160). The attending physician diagnosed combination headaches with both migraine and chronic daily components and adjusted her medication. (Id. at 158). Plaintiff was advised to stop taking Esgic and to get on a decaffeinated diet. (Id.) She was also given an Imitrex shot and other medication, and advised to obtain a head CT with/without contrast. (Id.)

On July 23-24, 2001, Plaintiff was treated at the ER for right hand, shoulder and neck pain, after suffering a fall. (Tr. 162-167). Her x-rays revealed a normal right shoulder, no neck

---

rendered his decision. The undersigned adds, that while the record contains allegations of depression, Plaintiff does not allege any mental impairment claims here, and as such, her depression is not before this Court.

abnormalities and a fractured index finger on her right hand on which a splint was placed. (Id.) She was alert and oriented, and was assessed with cervical strain. (Id.) On September 11, 2002, she was treated at the Infirmary's ER for cough/congestion, depression and migraines. (Id. at 168-174). Her physical exam revealed mild respiratory distress and wheezing. (Id.) She was assessed with bronchitis and bronchospasm and told to quit smoking; her chest x-ray was normal. (Id. at 171-172). On September 24, 2002, she was treated at USA's ER for a migraine. (Tr. 175-176). She reported having migraines five times per month. (Id.) Her medication was adjusted; however, she reported that her headaches were not relieved by Esgic. (Id. at 175).

Plaintiff was treated by Reuben Belen, M.D. ("Dr. Belen") at the Mobile County Health Department ("MCHD") from 2001 through 2004. (Id. at 207-208, 210-249). Over the course of her treatment, Plaintiff presented with a number of complaints including migraines, knots in both hands, chronic lower back and neck pain, and depression. (Id.) She was diagnosed with headaches, chronic neck pain, cervical disc disease, osteoporosis, depression and bronchitis. (Id.) An April 2003 MRI revealed disc herniations at C-4-5, C5-6 and C6-7, with no definite cord compression. (Tr. 207-208, 210-249). During her treatment, Plaintiff was prescribed various medications including Darvocet, Soma, Esgic, Phenergen, Premarin, Fosamax and Zoloft. (Id.) In July 2003, Dr. Belen noted that Plaintiff was doing well except for depression and insomnia. (Id.) In September 2003, Dr. Belen completed a Physical Capacities Evaluation ("PCE"). (Id. at 207). He concluded that Plaintiff can sit for 3 hours at one time; stand/walk for 2 hours at one time; sit for 6 hours total per day; stand/walk for 3 hours total per day; occasionally lift/carry up to 20 pounds; frequently lift/carry up to 10 pounds; continuously lift/carry up to 5 pounds; never lift/carry 21 pounds or more; cannot use her hands for repetitive action such as pushing/pulling of arm controls but can use them for simple

grasping and fine manipulation. (Id.) Dr. Belen further determined that Plaintiff can occasionally bend, squat, crawl, climb or reach; is moderately restricted from activities involving unprotected heights, moving machinery and driving automotive equipment; and is mildly restricted from activities involving exposure to marked temperature and humidity changes and exposure to dust, fumes and gases. (Id.) He opined that she has had these limitations for a few years. (Tr. 207).

On July 3, 2003, Plaintiff underwent a consultative evaluation by psychologist Kim M. Zweifler, Ph.D. ("Dr. Zweifler"). (Id. at 178-181). Her mental examination revealed the following: she had an appropriate mood and affect; she was fully oriented; she had no deficits in concentration, attention, memory, thought processes or content; she had little insight into her condition; and she had a Low Average to Average range of intelligence. (Id.) Dr. Zweifler diagnosed Plaintiff with depression NOS and multiple somatic complaints, and noted that a favorable response to treatment could be expected within 6-12 months. (Id.)

On July 7, 2003, Plaintiff was seen by Eric G. Becker, D.O. for a consultative physical examination. (Id. at 182-183). She reported multiple chronic medical complaints including chronic neck, low back (she was diagnosed with DDD in these areas), problems with hand tendons and weekly migraines. (Id.) Her examination revealed that she was alert and oriented, her neck had an unremarkable range of motion, her lungs had diminished breath sounds and scattered wheezes, her hands had 4/5 grip strength bilaterally, her upper and lower extremities had 4/5 strength and unremarkable range of motion, her gait was not grossly impaired, and while she was able to squat and arise, she complained of low back pain when doing so. (Tr. 183). Dr. Becker diagnosed Plaintiff with a history of cervical and lumbar disc disease, bilateral hand pain and swelling due to early Dupuytren's contracture, chronic migraines and depression; COPD; and a history of IBS and

osteoporosis. (Id.)

On July 24, 2003, a State Agency physician reviewed Plaintiff's records and completed a Physical Residual Functional Capacity Assessment, concluding that she retains the residual functional capacity to lift/carry 20 pounds occasionally, lift/carry 10 pounds frequently, stand/walk 6 hours per day, sit 6 hours per day, has unlimited push/pull abilities, and has no other limitations. (Id. at 198-205).

**1.     Whether the ALJ erred by failing to assign any weight, or discuss what weight was assigned, to Plaintiff's treating physician, and as a result, erred in finding that she retains the residual functional capacity to perform a full range of light work?**

Plaintiff contends that the ALJ erred under SSR 96-2p and 20 C.F.R. § 404.1527(d), by failing to assign weight to the opinion of her treating physician Dr. Belen and discuss the reasons for same. Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician, unless there is good cause to do otherwise. See, e.g., Lewis v. Callahan, 125 F.3d 1436, 1439-1441 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); Sabo v. Commissioner of Social Security, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d). See also Johnson v. Barnhart, 2005 WL 1414406, *2 (11th Cir. Jun. 17, 2005); Wind v. Barnhart, 2005 WL 1317040, *6 (11th Cir. Jun. 2, 2005) (citing to Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1159 (11th Cir. 2004)). Such "good cause" exists where: 1) the opinion was not bolstered by the evidence; 2) the evidence supported a contrary finding; or 3) opinion was conclusory or inconsistent with the doctor's own medical records. Johnson, 2005 WL 1414406, *2; Wind, 2005 WL 1317040, *6. "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error[;]" likewise, he commits error if he substitutes his own uninformed medical evaluations for those of a

claimant's treating physician, absent good cause. Id. It is the ALJ's duty, as finder of fact, to choose between conflicting evidence and he may reject the opinion of any physician when the evidence supports a finding to the contrary. Id. (citing to Landry v. Heckler, 782 F.2d 1551, 1554 (11th Cir. 1986) and Bloodsworth, 703 F.2d at 1240).[7]

In this case, the Secretary concedes that the ALJ did not articulate the weight given to the opinion of Plaintiff's treating physician, Dr. Belen, nor the reasons for same. The Secretary contends, however, that this omission amounts to harmless error because by "limiting Plaintiff to light work with no additional limitations, the ALJ implicitly declined to give Dr. Belen's opinions controlling weight." Based upon a review of the ALJ's decision, it is clear that the ALJ gave greater weight to the opinion of the examining physician, Dr. Becker, than the opinion of Plaintiff's treating physician, Dr. Belen. As noted supra, Dr. Belen treated Plaintiff between 2001 and 2004, and completed a Physical Capacities Evaluation wherein he concluded, in part, that Plaintiff could sit for 3 hours at a time and for 6 hours total in an 8-hour workday; stand/walk for 2 hours at a time and for 3 hours total in an 8-hour workday; and occasionally lift/carry up to 20 pounds. (Tr. 207). He also stated that Plaintiff could not push or pull arm controls, but could occasionally bend, squat, crawl, climb and reach. (Id.) He found further, that Plaintiff was mildly limited from activities involving exposure to marked changes in temperature and humidity and to exposure to dust, fumes and gases; and was moderately limited from activities involving exposure to unprotected heights, being around moving machinery and driving automotive equipment. (Id.) While Dr. Belen's opinion was not binding on the ALJ, see 20 C.F.R. § 404.1527(e)(1), the ALJ must clearly articulate

---

[7]The Eleventh Circuit has repeatedly made clear that the opinion of a treating physician must be given substantial weight unless good cause is shown for its rejection. See, e.g., Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Sharfarz v. Bowen, 825 F.2d 278, 279-280 (11th Cir. 1987); Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). See also 20 C.F.R. § 404.1527(d)(2).

the reasons for assigning less weight to his opinion. In this case, however, the ALJ merely indicated that there was no medical evidence to support a finding that Plaintiff experiences lower extremity deficits which would preclude the standing and walking required for light work, that an April 2003 MRI showed no definite spinal cord compression, and that Dr. Becker found that Plaintiff had 4/5 strength in both her upper and lower extremities. (Tr. 23). The ALJ simply did not discuss the reasons why the opinion of Dr. Belen, who had been treating Plaintiff for chronic back and neck pain since 2001, was not entitled to controlling weight. Moreover, there is no discussion of whether Dr. Belen's treatment records support his findings that Plaintiff can stand for 2 hours at a time and for 3 hours total in an 8-hour workday. While the Government suggests that this Court can surmise about the weight the ALJ accorded Dr. Belen's opinion, and the reasons for same, the undersigned declines to do so where the ALJ has a duty to clearly articulate the reasons for assigning less weight to the opinion of a treating physician.[8] See, e.g., Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). See also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (requiring the agency to "give reasons" for not giving weight to a treating physician's opinion); Wiggins v. Schweiker, 679 F.2d 1387, 1390 (11th Cir. 1982) (holding that remand is required where the court is "unable to determine whether the ALJ applied the proper legal standard and gave the treating physician's evidence substantial or considerable weight or found good cause not to do so[]"); Miller v. Apfel, 1999 WL 1320296, *2-3 (S.D. Ala. Jul. 2, 1999) (same). Accordingly, the undersigned recommends that this matter be remanded to the ALJ so that he can clearly articulate the weight accorded to the opinion of Dr.

---

[8]It is also worth noting that where a Commissioner ignores or fails to properly refute a treating physician's opinion, it will be accepted as true as a matter of law. See, e.g, MacGregor, 786 F.2d at 1058; Ortega v. Chater, 933 F. Supp. 1071, 1076 (S.D. Fla. 1996). See also Elam v. Railroad Retirement Board, 921 F.2d 1210, 1215 (11th Cir. 1991); Wallace v. Barnhart, 256 F. Supp. 2d 1360, 1373 (S.D. Fla. 2003); Harrison v. Barnhart, 346 F. Sup. 2d 1188, 1192 (N.D. Ala. 2004).

Belen, Plaintiff's treating physician, and the reasons for rejecting or according less weight to said opinion.  In light of this recommendation, the undersigned has not addressed the remaining issues raised by Plaintiff.

**V.**     **Conclusion**

For the reasons set forth, and upon careful consideration of the administrative record and memoranda of the parties, it is recommended that the decision of the Commissioner of Social Security, denying Plaintiff's claim for supplemental security income, be **REVERSED** and **REMANDED** for further proceedings consistent with this Report and Recommendation**.**

The attached sheet contains important information regarding objections to this Report and Recommendation.

**DONE** this **9th** day of **February, 2007.**

             **/s/SONJA F. BIVINS            **
**UNITED STATES MAGISTRATE JUDGE**

# MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. **Objection**. Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(c); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Opposing party's response to the objection.** Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection. Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3. **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                                                      **/s/SONJA F. BIVINS**
                                                    **UNITED STATES MAGISTRATE JUDGE**